Douglas E. McKinley, Jr.
PO Box 202
Richland, WA 99352
(509) 628-0809

i.Justice Law, P.C.
Robert J. Siegel
1325 Fourth Ave., Suite 940
Seattle, WA 98101
(206) 304-5400

HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | |
|---|---|
| **OMNI INNOVATIONS, LLC, a Washington Limited Liability company; and JAMES S. GORDON, JR., a married individual,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BMG COLUMBIA HOUSE, INC., a New York corporation; and JOHN DOES, I-X,**<br><br>**Defendants,** | **NO.** CV6-1350 JCC<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS** |

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 1

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

**Plaintiffs Are Entitled To Injunctive Relief Under The Act.**

Defendants pretend that there is something unusual or novel about Plaintiff's request that the Court grant a permanent injunction to enforce a statute restricting their unwanted commercial speech in the form of spam directed towards the Plaintiff at the preliminary stages of the case. Nothing could be further from the truth. Congress and the States routinely enact statutes restricting unwanted speech, both commercial and non-commercial, and the Courts, including the Supreme Court, routinely issue and enforce permanent injunctions enjoining future violations of those prohibitions.

In *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) the Supreme Court considered a case where a state court permanently enjoined petitioners from blocking or interfering with public access to a Florida abortion clinic when petitioners and other antiabortion protesters merely threatened to picket and demonstrate around the clinic. Later, when the petitioners made good on their threats, and the court issued an amended permanent injunction which, inter alia, restricted the use of "images observable" by patients inside the clinic and created a 300 foot buffer zone around the residences of clinic staff. The Supreme Court upheld the injunction.

In the *Madsen* case, the "damages" caused by the restricted speech were presumed by the statute. The challenge brought by the petitioners was based on a claimed violation of their 5th

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 2

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

OMNI v. BMG-COLUMBIA HOUSE

amendment rights, but the "damages" were never in doubt. The same is true here. By explicitly requiring that Defendants stop sending further spam after they have been asked, Congress has recognized that the receipt of unwanted spam, in and of itself, inherently "damages" the recipient. No further showing under general principles of equity is necessary, because the Act itself defines the conduct as impermissible. By explicitly making injunctive relief available to prohibit Defendants from sending further spam after they have been asked to stop, Congress has recognized that forcing a Plaintiff to receive unwanted spam after that request is, in and of itself, a wrong that has no adequate remedy at law. Thus, no further showing under general principles of equity is required, because the Act itself explicitly authorizes the relief sought.

Defendants claim, incredibly, that general principles of equity give them the right to avoid injunctive relief, and thus the right to continue to send Plaintiff spam indefinitely, despite their receipt of Plaintiff's request asking them to stop. Defendants further claim that general principles of equity require that until and unless Plaintiff can quantify how the ongoing receipt of their spam monetarily "damages" the Defendants, that the explicit statutory prohibition against them sending it cannot be enforced. If the Court accepts this line of reasoning, then the entire prohibition against sending a recipient unwanted spam after a party has been asked to stop under 15 USC 7704(a)(4) becomes meaningless. If the prohibition against sending this spam itself is not sufficient to trigger the availability of injunctive relief, then the explicit remedy of injunctive relief set forth in the Act becomes an illusion.

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 3

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

1  The Court has a choice. It can eviscerate the CAN SPAM Act's prohibition against
2  sending spam to someone who doesn't want it, and who has requested not to receive it, or it can
3  effectuate the explicit purpose of the Act. The Act explicitly says that a person is not permitted
4  to send spam to another after they have been asked to stop. 15 USC 7704(a)(4). If they won't
5  stop sending spam, the Act explicitly authorizes injunctive relief to make them stop. 15 USC
6  7706(g)(1). In authorizing injunctive relief, the Act makes no reference to general principles of
7  equity. Accordingly, the Defendant's reliance on *eBay Inc v. MercExchange, L.L.C.*, 126 S. Ct.
8  1837 (2006) is misplaced.

9  In *eBay*, the Court considered an injunction under the Patent Act, specifically 15 USC §
10 283. As the Court noted, Congress explicitly incorporated the general principles of equity into
11 the text of the Patent Act. The Court states: "the Patent Act expressly provides that injunctions
12 'may' issue 'in accordance with the principles of equity.' 35 U. S. C. §283." *eBay* at n.2. No such
13 reference to general principles of equity exists in the CAN SPAM Act, and thus the Act is readily
14 distinguished from both the Patent Act and the Supreme Court's holding in *eBay Inc v.
15 MercExchange, L.L.C.* because the statute at issue in the present case doesn't require that general
16 principles of equity apply to the injunctive relief authorized under the Act. The Court should
17 therefore enforce the injunctive relief specifically authorized in the Act without applying the
18 additional requirements set forth by general principles of equity.

PLAINTIFFS' REPLY TO DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
PERMANENTLY ENJOINING DEFENDANTS FROM
SENDING COMMERCIAL EMAIL TO PLAINTIFFS -
4

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

Defendants claim that they are no longer sending spam to Plaintiff. Plaintiff disagrees, but even if Defendant's claim was true, it would not stop the Court from entering a permanent injunction prohibiting future violations.

> "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. *Hecht Co. v. Bowles, supra; Goshen Mfg. Co. v. Myers Mfg. Co.*, 242 U.S. 202 (1916). The purpose of an injunction is to prevent future violations, *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928), and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

It is plain that much more than the "mere possibility" of "recurrent violations" is present. The fact is that actual incidents of "recurrent violations" are ongoing. See Declaration of James S. Gordon, Jr.

**Plaintiffs Satisfy The Elements For Equitable Injunctive Relief.**

Even if the Court applies the equitable principles of *eBay Inc v. MercExchange, L.L.C.*, the Plaintiff is still entitled to equitable relief. It is disingenuous in the extreme for Defendants to argue that Plaintiffs cannot show "irreparable harm". The Act itself is founded upon the assumption that the receipt of unwanted commercial email adversely affects recipients such as Plaintiffs, and the mandate to stop such unwanted email. Plainly, that is the fundamental purpose and intent of the Act. To interpret the Act in any other way would be to thwart the will of

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 5

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

Congress, and would effectively eviscerate the Act.  Nonetheless, Defendants essentially argue that because Gordon has brought other lawsuits of this type to enforce the Act, and because he has realized financial gain through settlements as a result of bringing those lawsuits, he is somehow beyond suffering irreparable harm.  To the contrary, a reading of the Gordon Declarations makes it perfectly clear that he has, and continues to be substantially and irreparably harmed by the receipt of unwanted commercial email sent by or on behalf of Defendants and others.

Defendants argument is more than somewhat hypocritical to the extent they contend that Plaintiffs' remedy at law is adequate, while on the other hand chastising Plaintiffs for actually realizing on that remedy, ie., monetary damages.  Obviously, no remedy is the only remedy Defendants would have this Court award.  Nonetheless, Gordon has made it clear that he has brought this and other lawsuits, not for monetary damages, but to stop the incessant flow of spam.  And, for that, the monetary damages created by the statutory penalties, and any financial gain realized therefrom, is clearly inadequate.

Regarding the balance of hardships between the parties here, there can be no credible argument in favor of allowing Defendants to send their unwanted spam unfettered.  The Act itself makes clear that the receipt of unwanted spam is the core conduct the Act addresses.  There is no inalienable right provided to Defendants or anyone else to send unwanted emails.  Thus, the balance of hardships clearly weights heavily in favor of Plaintiffs here.  To ask Defendants to

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 6

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

1  stop sending spam doesn't require them to do anything.  It merely asks that they refrain from
2  further unlawful actions.
3       Lastly, whether the public interest would be disserved by the granting of a permanent
4  injunction, there can be no serious dispute about that here.  The very essence of the Act is
5  premised upon the widely acknowledged harm to society in general, and the economy
6  specifically caused by the scourge of unwanted commercial email "spam."  There is no credible
7  argument whatsoever that the public's interest is somehow served by forcing people such as
8  Plaintiff to receive unwanted spam.  Accordingly, the only thing remaining to be done is for the
9  Court to enforce the Act and effectuate the true purpose and intent of the Act, by protecting
10 "recipients" from unwanted commercial email.

**Collateral Estoppel Does Not Apply As Plaintiffs Did Not Previously Have The Opportunity To Fully Litigate The Issue Of Standing.**

16      Defendant's argument that Plaintiffs standing is barred by collateral estoppel from the
17 Court's ruling in Gordon v. Virtumundo fails.  "Collateral estoppel" or "offensive nonmutual
18 issue preclusion" prevents a party from relitigating an issue that the party has litigated and lost.
19 See *Catholic Social Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1152 (9th Cir. 2000). In the Ninth
20 Circuit, the application of "offensive nonmutual issue preclusion" is appropriate if, inter alia,

PLAINTIFFS' REPLY TO DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
PERMANENTLY ENJOINING DEFENDANTS FROM
SENDING COMMERCIAL EMAIL TO PLAINTIFFS -
7

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

1  there was a "full and fair opportunity to litigate the identical issue in the prior action", see *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992); *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999); *Appling v. State Farm Mut. Auto Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).  In Gordon v. Virtumundo, Plaintiff was never given the opportunity to litigate the relevant issues.

Contrary to Defendant's assertions, in the Gordon v. Virtumundo ruling, the Court did in fact hold that Gordon was an "Internet Access Service," which is specifically authorized to bring claims, under the Act.  Applying the statutory definition, the Court stated: "Nevertheless, it is fairly clear that Plaintiffs are, in the most general terms, a "service that enables users to access" Internet content and e-mail, and accordingly, they qualify as an IAS under the statute's capacious definition."  (Cause No. CV06-0204JCC, Court's May 15, 2007 Order, Dkt. 121, pg. 13, lines 10-12)  The Court also agreed that Gordon had suffered an "adverse impact" as required by the Act. However, the Court nevertheless denied Gordon standing.

The Court's rationale for denying standing required the Court to reach into the legislative history to make a determination that Congress intended something more than an "adverse impact."  The Court concluded that Gordon was required to show "ISP- or IAS-specific burdens," that these burdens be "significant", and held that Gordon had not done so.  (Cause No. CV06-0204JCC, Court's May 15, 2007 Order, Dkt. 121, pg. 13, lines 12-13).  However, Gordon had no way of knowing that he would be required to show that he was required to show "ISP- or

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 8

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

IAS-specific burdens" and that these burdens had to be "significant" until after the Court issued its order.  Accordingly, Gordon never had a "full and fair opportunity to litigate the identical issue in the prior action" because the standard adopted by the Court did not exist until after all briefing was completed.  Indeed, Gordon has never, until this motion, had the opportunity to submit any evidence or brief the issues raised by the Court's order, because the Court's order dismissed Gordon's case using a standard that was articulated for the very first time in the order itself.

Applying the test articulated by the Court in Gordon v. Virtumundo, it is clear from Gordon's declaration in the present case that he has shown "ISP- or IAS-specific burdens" and that these burdens were "significant."  Among other things, Gordon has been forced to upgrade his servers as a result of spam, he has been forced to install additional software, and all of this came at great expense to a small Internet Access Service operated by an individual.  Everyday email users do not have their own servers, and they do not have to spend additional money to upgrade those servers as a result of spam.  Thus, Gordon's damages are therefore clearly "ISP- or IAS-specific burdens" and the attendant cost of these burdens was "significant."

**There is No Issue of Material Fact As To the Claim Asserted by Plaintiff In This Motion.**

Plaintiffs have established that there is no issue of material fact in dispute with regard to the simple issue presented by this Motion.  That is, whether Plaintiffs, as "recipients", requested

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 9

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

that Defendants not send commercial emails to them, and whether, after 10 days subsequent to that request Defendants did send commercial emails to Plaintiffs. If so, Defendants have violated 15 USC § 7704 (a)(4)(A), the analysis ends, and Plaintiff is entitled to the relief sought in this Motion as a matter of law. The Declarations of James S. Gordon, Jr. submitted in support of this Motion clearly establish that Gordon, both individually, and on behalf of Omni, did request (in fact numerous times) that Defendants not send commercial emails to his email addresses and domains, and further that after 10 days subsequent to those requests Defendants did send commercial emails to the relevant addresses and domains. In fact, Gordon's reply declaration establishes that, even after the filing of this very Motion, contrary to their unsubstantiated, self-serving assertions in their Response, and in complete disregard of the Act's prohibition, Defendants brazenly continue to send the unwanted emails. (See Gordon Declaration in Reply).

Defendants further argue, with no evidentiary support whatsoever, that Gordon may have given subsequent affirmative assent to receive their emails, and that discovery may yield such evidence. However, Gordon unequivocally denies such an assertion, and Defendants have submitted no evidence to support such a claim. Presumably, if Gordon did in fact give subsequent affirmative assent to Defendants, Defendants would possess such evidence and would have submitted it to the Court. Conspicuously, no such evidence has been offered.

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 10

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

OMNI v. BMG-COLUMBIA HOUSE

Accordingly, the Court should accept Gordon's statements in this regard as having been established for purposes of summary judgment.

Plaintiff's motion is only for partial summary judgment. As such, Plaintiff is not required to meet the heightened burden imposed upon them to prove <u>all</u> of the elements of <u>all</u> of their claims here. That is, Plaintiff's do not have to prove that Defendants sent or acted in concert with others to send commercial emails that violate the Act's substantive provisions, ie., containing false or misleading information in the email headers. Plaintiffs need not establish those other violations as they are not relevant to the clear, unambiguous language of the Act specifically prohibiting the conduct complained of on the part of Defendants, ie., sending of commercial email subsequent to 10 days following a request that they stop. Even if the Defendants spam complies in all material ways with the statute, (ie. all the headers and subject lines are not false and misleading), it *still* violates the statute if Defendants continue to send it after a request has been made that they stop.

There are two final issues raised by Defendants that merit discussion. First, Defendants claim that Plaintiff cannot meet the Summary Judgment standard because there are material facts in dispute. Specifically, Defendants claim that they have suppressed all Omni domains, and Omni should not receive any future email. However, as is plain by James S. Gordon's declaration filed herewith, Defendant's efforts at suppression have not been successful, as Omni continues to receive spam advertising Defendant and Defendant's company. In fact, as shown in

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 11

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

<u>OMNI v. BMG-COLUMBIA HOUSE</u>

Gordon's declaration, Omni received spam from Defendant on the same day that Defendant filed an affidavit with the Court saying it had stopped spamming Plaintiff. The Defendant's failure to stop this spam, even as it claims to the Court that it has done so, demonstrates why a permanent injunction is the only way to force them to stop.

Secondly, Defendants make a hyper-technical argument that Plaintiff must use the unsubscribe link to opt out of receiving spam under the Act. This is simply not true. The CAN SPAM Act plainly provides that Plaintiff can opt out using any mechanism Defendant provides in their email. 15 USC 7704(a)(3)(A) states:

> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message that does not contain a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that –
>   (i) a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received;

In this case, Defendant plainly sent its request not to receive future spam using the return email address provided by Defendant, which is a mechanism explicitly authorized in the Act. However, the Court should not engage in this sophistry. The Court should end these types of factual disputes by recognizing the clear Congressional intent, and holding that regardless of how someone requests to be left alone, as is the case here, if there is clear and indisputable evidence that the request was made, and there is clear and indisputable evidence that the sender

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 12

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

of the email had actual notice of the request, then a spammer must honor that request and leave the requesting party alone and not hide behind the hyper-technical defense that the request wasn't made in the "proper" manner.

## Conclusion

In the final analysis, in this motion, Plaintiff is really only asking to be left alone. Plaintiff is tired of having to deal with Defendant's spam. Plaintiff simply wants Defendant to stop. For the reasons set forth herein, Plaintiff respectfully asks the Court to enter a permanent injunction barring Defendant from sending Plaintiff any more spam.

RESPECTFULLY SUBMITTED this 11th day of July, 2007.

| i.JUSTICE LAW, P.C. | DOUGLAS E. MCKINLEY, JR |
| --- | --- |
|  | Attorney at Law |
| /S/ Robert J. Siegel | /S/ Douglas E. McKinley, Jr. |
| Robert J. Siegel, WSBA #17312 | Douglas E. McKinley, Jr., WSBA#20806 |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

## Certificate of Service

I, hereby, certify that on July 11, 2007, I filed this affidavit with this Court via approved electronic filing, and served the following:

PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT PERMANENTLY ENJOINING DEFENDANTS FROM SENDING COMMERCIAL EMAIL TO PLAINTIFFS - 13

OMNI v. BMG-COLUMBIA HOUSE

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299

1  Attorneys for Defendants: Roger Townsend

2  /s/ Robert J. Siegel
   Robert J. Siegel

22  PLAINTIFFS' REPLY TO DEFENDANTS'
23  MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
    MOTION FOR PARTIAL SUMMARY JUDGMENT
24  PERMANENTLY ENJOINING DEFENDANTS FROM
    SENDING COMMERCIAL EMAIL TO PLAINTIFFS -
25  14

    OMNI v. BMG-COLUMBIA HOUSE

**i.Justice Law, P.C.**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone/Fax: 888-839-3299